UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD LUTZE,

     Petitioner,

v.                                    Case No. 07-11227

JERRI-ANN SHERRY,                    HONORABLE AVERN COHN

     Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Todd Lutze is a state prisoner serving a mandatory life sentence following his conviction for first-degree felony murder arising from the death of a 17 month old child.  Petitioner claims that he is incarcerated in violation of his constitutional rights as follows:  (1) he was denied his right to present a defense, (2) the prosecutor committed misconduct, (3) trial counsel was ineffective, (4) a new trial should have been granted based on newly discovered evidence, (5) the introduction of junk science at trial denied him a fair trial, (6) the trial court was biased, (7) the evidence of felony murder was insufficient, (8) appellate counsel was ineffective, and (9) the standard of review on habeas cases is unconstitutional.

Petitioner requested and was granted oral argument on the claims presented in the petition.  Thereafter, Petitioner filed supplemental authority, to which Respondent

responded and Petitioner replied.  The matter is now ready for decision.  For the

reasons that follow, the petition will is DENIED.

## II.  Background

### A.  Factual

Petitioner's conviction stems from the death of seventeen-month-old Lydia Aris,

the daughter of his live-in girlfriend, Amy Barnette.

The Michigan Court of Appeals summarized the facts.  Additional facts relevant

to specific claims will be detailed below.

> . . . The child had been left in defendant's care while Barnette was at work.
> Defendant called Barnette at work and asked her to return home because
> something was wrong with the child.  When Barnette arrived home, the child was
> not breathing.  Barnette called "911" for assistance and defendant's voice could
> be heard in the background during that call.  However, when the police and
> paramedics arrived, defendant was not present.
> The child suffered severe injuries, resulting from both shacking and blunt
> force trauma.  The medical testimony established that the injuries were so sever
> that the child probably lapsed into a coma almost immediately.  Barnette testified
> that, before she left for work that morning, the child was awake and acting
> normal.  There was evidence that defendant made statements to several friends
> indicating that, while caring for the child, he dropped the child on the floor after
> she defecated on the floor and on him.
> The defense theory at trial was that someone other than defendant,
> including the child's mother, inflicted the child's severe injuries earlier, but that
> the child did not lapse into a coma until later, when defendant was watching the
> child.

People v. Lutze, No. 222430 (Mich. Ct. App. May 27, 2003) (unpublished).

### B.  Procedural History

Petitioner was charged on July 16, 2000 with first degree felony murder and first

degree child abuse.  A jury trial took place in Genesee County Court from December 5

through December 8, 2000.  The jury convicted Petitioner on both counts.  On January

22, 2001, Petitioner was sentenced to mandatory non-parolable life in prison.

Petitioner filed a direct appeal with the Michigan Court of Appeals, presenting the following claims:

I.      By excluding a videotape that showed someone other than [Petitioner] may have been responsible for the abuse and death and by not even viewing any of the tape, the trial judge violated [Petitioner's] state and federal due process rights to present a defense, disregarded the Rules of Evidence, in particular MRE 404(b), and failed to exercise her discretion.

II.     Where the level of abuse was an important issued, the trial judge denied [Petitioner] a fair trial and committed reversible error by refusing to instruct the jury on third-degree child abuse and only instructing on first-degree

III.    Where the prosecutor repeatedly elicited irrelevant, highly prejudicial evidence that [Petitioner] was a criminal or a fugitive wanted by the police and the prosecutor told the jury without any evidentiary basis that Petitioner called the victim "a little bitch," the prosecutor engaged in misconduct that deprived [Petitioner] of his state and federal constitutional rights to due process and a fair trial, and the trial judge erred in denying the defense motion for a mistrial.

IV.     Conviction and sentenced of [Petitioner] for both first-degree felony murder and the included felony of first-degree child abuse were contrary to legislative intent and violated constitutional protections against double jeopardy..

Petitioner filed a <u>pro se</u> supplemental brief, raising the following claim:

I.      Whether the prosecutor engaged in an intentional course of conduct that sought to denigrate [Petitioner's] lawyer, made emotional appeals to the jury, intentionally introduced innuendoes of unsubstantiated prior bad pacts, repeatedly elicited irrelevant, highly prejudicial evidence that [Petitioner] was a criminal or fugitive wanted by the police, ignored with [impunity] the trial court's rulings and instructions coupled with the trial court's inability or unwillingness to control the prosecutor, told the jury, without an evidentiary basis, that [Petitioner] had called the victim "a little bitch," and engaged in misconduct that resulted in a denial of [Petitioner's] federal and state right to due process and a fair trial.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions and sentence for felony murder, but vacated his conviction and sentence for first-degree child abuse on double jeopardy grounds. <u>People v. Lutze</u>, No.

232430.

Petitioner filed a delayed application for leave to appeal with the Michigan

Supreme Court, presenting the same claims raised in the court of appeal except the

double jeopardy claim. The Michigan Supreme Court denied leave to appeal in a

standard order on the grounds it was not persuaded the questions presented should be

reviewed. People v. Lutze, No. 124289 (Mich. Dec. 30, 2003).

In January 2005, Petitioner[1] filed a motion for relief from judgment in the trial

court, presenting the following claims:

I.    Petitioner was denied the effective assistance of counsel where his trial
      attorney, with no strategic purpose, made several outcome-determinative
      errors.

II.   The developing information on SBS (Shaken Baby Syndrome) establishes
      that [Petitioner] did not shake the deceased baby and requires the grant of
      a new trial under newly discovered evidence standards; the denial of relief
      would violate [Petitioner's] state and federal due process rights.

III.  The substantial presentation of SBS (Shaken Baby Syndrome) evidence
      during the several trial days, evidence consistently emphasized by the
      prosecution as determinative of guilt, where the evidence was in fact junk
      science, denied [Petitioner] his right to due process under the state and
      federal constitution

IV.   [Petitioner] was denied his due process right to a fair trial under the state
      and federal constitutions where the trial court's expressed personal
      interest in the outcome (and association with the prosecution) caused her
      to conduct the proceedings in a manner which interfered with the
      presentation of the defense and that which would lead to believe that the
      court thought the prosecution should prevail.

V.    The evidence of felon murder was insufficient, denying [Petitioner] his due
      process rights under the state and federal constitutions. When the
      legislature made first-degree child abuse a predicate felony for purposes

_____

[1]Petitioner's counsel who filed the 6.500 motion is the same counsel who filed the
instant petition.

of the felony-murder rule, it did not intend to turn every impulsive murder of a child by his parent or custodian into first-degree murder. Additionally, the statute at issue fails to provide fair notice and therefore is unconstitutionally vague as applied under the federal and state constitutions.

VI. [Petitioner] was denied the effective assistance of counsel where his appellate counsel neglected strong, critical issues, which must be seen as significant and obvious.

The trial court issued an opinion and order denying Petitioner's motion. The Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Lutze, No. 263579 (Mich. Ct. App. Jan. 6, 2006). The Michigan Supreme Court similarly denied relief. People v. Lutze, No. 130513 (Mich. Jan. 29, 2007).

In March 2007, Petitioner filed the instant petition, raising the following claims:

I. By excluding videotape that showed that someone other than Petitioner may have been responsible for the abuse and death and by not even viewing the videotape the trial judge violated Petitioner's federal due process rights to present a defense

II. Where the prosecutor repeatedly elicited irrelevant, highly prejudicial evidence that [Petitioner] was a criminal or a fugitive wanted by the police and the prosecutor told the jury without any evidentiary basis that Petitioner called the victim "a little bitch," the prosecutor engaged in misconduct that deprived [Petitioner] of his state and federal constitutional rights to due process and a fair trial, and the trial judge erred in denying the defense motion for a mistrial. Additional prosecutorial misconduct also combined to deny Petitioner his federal due process right to a fair trial.

III. Petitioner was denied the effective assistance of counsel where his trial attorney, with no strategic purpose, made several outcome-determinative errors

IV. Petitioner's due process rights to a fair trial and right to a trial by jury were violated when a new trial was not granted by the Michigan appellate courts after a showing of newly discovered evidence. The newly discovered evidence on SBS (Shaken Baby Syndrome) establishes that Petitioner did not shake the deceased baby, would make a different result probably on

retrial and was not discoverable earlier through the exercise of due diligence

V.    The substantial presentation of SBS (Shaken Baby Syndrome) evidence during the several trial days, evidence consistently emphasized by the prosecution as determinative of guilt, where the evidence was in fact junk science, denied Petitioner his right to due process under the federal constitution

VI.   Petitioner was denied his due process right to a fair trial under the state and federal constitutions where the trial court's expressed personal interest in the outcome (and association with the prosecution) caused her to conduct the proceedings in a manner which interfered with the presentation of the defense and that which would lead to believe that the court thought the prosecution should prevail.

VII.  The evidence of felon murder was insufficient, denying [Petitioner] his due process rights under the state and federal constitutions.  When the legislature made first-degree child abuse a predicate felony for purposes of the felony-murder rule, it did not intend to turn every impulsive murder of a child by his parent or custodian into first-degree murder.  Additionally, the statute at issue fails to provide fair notice and therefore is unconstitutionally vague as applied under the federal constitution.

VIII. Petitioner was denied the effective assistance of counsel where his appellate counsel neglected strong, critical issues, which must be seen as significant and obvious.

IX.   Assuming arguendo, that the standard of review set forth in 28 U.S.C. § 2254(D)(1) precludes relief in this action, the court should not apply that standard because it is unconstitutional, and the court should grant the writ under a de novo standard of review

Respondent filed a response to the petition.  The Rule 5 materials, however, were not filed until two months later.

### III.  Standard of Review[2]

Under 28 U.S.C. §2254(d)(1), a petitioner is not entitled to relief in a federal

---

[2]In Claim IX., Petitioner challenges the applicable standard of review.  As discussed infra, the Court must apply the standard of review under 28 U.S.C. 2254(D)(1).

habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"Clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 365; see also Prince v. Vincent, 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable," as opposed to

transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable.  <u>Williams v. Taylor</u>, 529 U.S. at 411.

IV.  Analysis

A.  Claim IX. - Standard of Review

1.  Background/Parties' Positions

Petitioner argues that the standard of review in habeas cases is unconstitutional. Although this claim is presented as the final claim in the petition, it is appropriate to first address it since it relates to the analysis of Petitioner's other claims.  Petitioner argues that the statute, 28 U.S.C. § 2254(d) is unconstitutional because (1) it violates the separation of powers doctrine in requiring a habeas court to ignore its own body of constitutional law, (2) violates the Supremacy Clause because it restricts the federal courts from denying effect to a state court decision it feels misapplied constitutional law, (3) violates Article III because it requires a federal habeas court to issue advisory opinions, (4) violates due process because it prevents a habeas court from redressing violations of due process, and (5) violates Article I, Section 9 because the strictures set out in the statute effectively suspends the writ of habeas corpus.

2.  Decision

This claim lacks merit.  Section 2254(d)(1) does not violate the separation of powers doctrine.  See <u>Green v. French</u>, 143 F.3d 865, 874-75 (4th Cir. 1998)(explaining that section 2254 simply adopts a choice of law rule that prospectively governs habeas

cases and does not otherwise run afoul of the separation of powers doctrine). It also does not violate the Supremacy Clause. The Supremacy Clause concerns conflicts between state and federal laws, not between state and federal judges. Moreover, there is nothing in section 2254(d) that requires a habeas court to render an advisory opinion. The due process clause does not require that every violation occurring in the state courts be remedied in federal court. Congress has the ability to restrict federal habeas relief. See Herbert v. Billy, 160 F.3d 1131 (6th Cir. 1998). Finally, section 2254(d)(1) does not suspend the writ, but simply modifies the preconditions for habeas relief. See Crater v. Galaza, 491 F.3d 1119, 1129 (9th Cir. 2007) (noting that "the constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute. . . the Court has consistently applied AEDPA's standard of review to appellate habeas decisions").

### B. Claim I. - Videotape

#### 1. Background/Parties' Positions

Petitioner alleges that the trial court deprived him of a right to present a defense by excluding, without viewing, a videotape. Respondent says the claim lacks merit.

Trial counsel brought up the issue of the videotape during the trial. Although the prosecutor had apparently seen the videotape, the trial court was not aware of its existence until then. The trial court asked trial counsel to explain its relevancy. Trial counsel explained he wanted to show that "somebody else was putting marks" on the [victim], other than [Petitioner]." The injuries allegedly on the videotape were from May 31 to June 12, 2000. Apparently, there was testimony that the victim had hair pulled out

earlier and perhaps other unexplained marks.  The incident in question, however, took place on July 14, 2000.  The prosecutor objected, explaining that it was too remote in time, not relevant and more prejudicial than probative.[3]

Trial counsel explained:

The reason I really wanted to introduce this, your Honor, is because the family members kind of insinuated that the baby had a history of abuse.  The hair pulling came out during their testimony and it - the issue came up as the fact that they all believe that this coincided with when my client was around and able to do this.  Your Honor, if – if – if we can address this by stipulation, I'd be willing to, and the . . the fact is there is not a single witness who ever saw my client lay a hand on that child.

Tr. 12/7/00 at p. 148.

The trial court refused to allow the videotape into evidence, explaining:

The videotape, to the extent it appears to be based on a - a filming occurring late May or early June, which may or may not show something about her hair, will not be admitted.

. . .

The Court will indicate as follows.  The hair, as depicted and the child in the video are both unable to tell us who or under what circumstances the hair was cut and the way it was cut, whatever way it is cut.

The only testimony now before this Court is the great-grandmother and the grandmother indicating either one day or one week prior to the death of the child that at least one of them noticed hair on the side of the head removed and the other one, hair on both sides of the head appeared to be removed or thinning.  And that's it.  Now, that won't be admitted.

Id. at 148-49.

The Michigan Court of Appeals rejected this claim on direct review as follows:

---

[3]The prosecutor also explained that there were at least ten unidentified people in the videotape and that it depicted the consumption of alcohol, individuals with tattoos, nudity, and an obscene gesture.

> We agree that the events depicted on the videotape were too remote to have any relevancy to this case. Indeed, defendant did not contend that the videotape depicted any of the injuries that allegedly caused the child's death. The trial court did not abuse its discretion by excluding this evidence. Moreover, the trial court's failure to view the videotape before making its ruling does not require reversal. Neither party asked the court to view the videotape. The court was bale to properly decide the issue on the basis of the detailed offer of proof that was made. Furthermore, our own review of the videotape supports the conclusion that it was not relevant. In this regard, we disagree with defendant's claim that the videotape was material evidence of abuse by others similar to that which caused the child's death. A review of the videotape fails to disclose any abuse or injuries that even remotely resemble the extreme and sever injuries that caused the child's death. The videotape did not constitute competent evidence, beyond a mere suspicion or speculation, that someone other than defendant was responsible for those injuries.

People v. Lutze, slip op. at p. 2.

### 2. Decision

#### a.

Petitioner argues that he was deprived of his right to present a defense because of the exclusion of the videotape. As an initial matter, it is well-established that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Louis v. Jeffers, 497 U.S. 764, 780 (1990)). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quoting Patterson v. New York, 432 U.S. 197, 202 (1977)); see also Seymour v. Walker, 224 F.3d 542, 552 (6th Cir.2000). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right

to a fair trial." <u>Kelly v. Withrow</u>, 25 F.3d 363, 370 (6th Cir.1994) (quoted in <u>Biros v. Bagley</u>, 422 F.3d 379, 391 (6th Cir.2005)).

A defendant in a criminal trial possesses "the right to a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). "[T]he right ... to call one's own witnesses is fundamental to a defendant's due process rights." <u>Giles v. Schotten</u>, 449 F.3d 698, 704 (6th Cir .) (citing <u>Chambers</u>, 410 U.S. at 294), cert. denied, --- U.S. ----, 127 S.Ct. 589 (2006). However, "[a] defendant's right to present a 'complete' defense ... does not automatically trump state evidentiary rules. The competing interests must be balanced, and 'a defendant's interest in presenting ... evidence may [have to] bow to accommodate other legitimate interests in the criminal trial process.' " <u>Rockwell v. Yukins</u>, 341 F.3d 507, 513 (6th Cir. 2003) (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998)). In other words, the right to present a defense is not absolute. <u>Ferensic v. Birkett</u>, 501 F.3d 469, 475 (6th Cir. 2007).

> While the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury .... [T]he Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' "

<u>Holmes v. South Carolina</u>, 547 U.S. 319, 326-27 (2006) (citations omitted); see also <u>Scheffer</u>, 523 U.S. at 308 (stating that the exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused").

b.

The Michigan Court of Appeals' decision is reasonable.  Although the videotape is not, for reasons that are unclear, part of the record, it is undisputed that the alleged injuries (bruises and missing hair) appearing on the videotape were over a month before the incident.  Thus, any injuries were clearly not relevant to whether Petitioner injured the child on the date in question.  The trial court made an individual determination after hearing detailed offers of proof that the videotape did not contain relevant evidence.  Moreover, there was no testimony that anyone had ever seen Petitioner lay a hand on the victim, a point trial counsel was able to bring out.  In short, Petitioner was not deprived of his right to present a defense as a result of the exclusion of the videotape.

C.  Claim II. - Prosecutorial Misconduct

1.  Background/Parties' Positions

Petitioner says that the prosecutor engaged in several, severe instances of misconduct, most of which relate to references from witnesses that Petitioner had a criminal background.  Petitioner also objects to the prosecutor's comment during closing argument that Petitioner referred to the victim as "a little bitch," which was without evidentiary support.  All of these instances of alleged misconduct were objected to on the record.  Petitioner also says the prosecutor improperly injected emotion into the case and committed other misconduct.  Those instances are taken from Petitioner's pro se supplemental brief on appeal and relate to alleged misconduct at trial to which trial counsel did not make a contemporaneous objection.

Respondent says that the claim lacks merit.

The Michigan Court of Appeals rejected this claim, explaining:

During trial, two prosecution witnesses made reference to the fact that defendant had a criminal record or had been incarcerated in jail at some point. These reference did not warrant a mistrial. A mistrial is generally not required where a witness provides an unresponsive answer and there is no indication that the prosecutor played a role in encouraging the witness to give the response or knew that the witness would provide unresponsive testimony. Here, the prosecutor's questions to the witnesses were not calculated at eliciting the responses regarding defendant's prior record or criminal past. The trial court did not abuse its discretion by denying defendant's request for a mistrial.

Defendant also claims that the prosecutor committed misconduct when he stated in closing argument that defendant had called the child "a little bitch. We agree that the prosecutor's remark was improper because there was no evidence that defendant made the statement.

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context.

Here, defendant immediately objected to the erroneous remark and the trial court sustained the objection and instructed the jury to disregard the remark. The court's instruction was sufficient to cure any error.

. . .

Defendant also argues that the prosecutor improperly appealed to the juror's sympathy for the victim during his rebuttal argument. We disagree. The challenged remarks did not constitute an obvious plea to sympathize with the victim.

. . .

In a pro se supplemental brief, defendant alleges numerous acts of misconduct by the prosecutor. He alleges that the prosecutor (1) denigrated defense counsel and called defendant a liar, (2) intentionally interjected emotional appeal into the trial, (3) intentionally and deliberately violated the court's rulings and instructions, (4) deliberately and intentionally offered unsubstantiated evidence of defendant's prior bad acts, and (5) improperly presented new arguments in rebuttal argument.

. . . Here, however, most of the alleged errors were not preserved with an

appropriate objection at trial.  Accordingly, we review those issues for plain error . . . . A review of these claims reveals that defendant has not established a plain error affecting his constitutional rights.  Moreover, with regard to those matters that were preserved, most involved matters to which the trial court responded promptly and appropriately, thereby curing any error.  Defendant has not established that the prosecutor's conduct deprived him of a fair trial.

People v. Lutze, slip op. at p. 3-5.

## 2.  Decision
### a.

The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  To satisfy this standard, the conduct must be both improper and flagrant.  Broom v. Mitchell, 441 F.3d 392, 412 (6th Cir. 2006); see also Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997) (noting that reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant") (internal citation omitted).  If conduct is found to be improper, four factors are then considered to determine whether the conduct was flagrant and therefore warrants reversal: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." Bates v. Bell, 402 F.3d 635, 641 (6th Cir. 2005).

b.

The Court of Appeals' decision is reasonable. While Petitioner points to a veritable host of alleged misconduct incidents, most incidents were objected to and cured by the trial court. As the Court of Appeals fully explained, the alleged misconduct incidents which were not preserved does not rise to the level of denying Petitioner a fair trial.

At the hearing, Petitioner's counsel in particular argued that the prosecutor improperly commented on Petitioner's decision to take the stand, contending that it deprived him of a fair trial. A review of the transcript shows that the prosecutor, in closing argument, said "And, so he takes the stand, and what does he do? He lies. Why does he lie? You can draw your own conclusion on that." Tr. Vol. IV p. 188. This statement is clearly within the bounds of permissible closing argument and simply reflects the prosecutor's view of Petitioner's testimony. It did not deprive Petitioner of a fair trial. Moreover, the trial court instructed the jury to consider only the evidence, not attorney's statements, in their deliberations. In short, the prosecutor's statement does not rise to the level of prosecutorial misconduct.

However, as will be discussed below, Petitioner's trial counsel submitted an affidavit in which he says he believes the prosecutor committed misconduct and that he was ineffective in failing to object to many instances of it. As Respondent points out, the record contains a letter from trial counsel to appellate counsel dated December 5, 2001 – prior to the time that appellate counsel filed his brief on appeal. The letter is an abbreviated version of trial counsel's affidavit. In the letter, trial counsel sets forth

thoughts and comments about Petitioner's trial and a summary of possible issues, including prosecutorial misconduct, conceding that some of the issues were not preserved. Appellate counsel, as noted above, raised several issues on appeal, including prosecutorial misconduct. The fact that appellate counsel did not raise all of the alleged instances of prosecutorial misconduct does not mean that appellate counsel was ineffective. Trial counsel's affidavit adds additional allegations of prosecutorial misconduct and states his belief that he was ineffective. Because the Court has concluded that none of Petitioner's many allegations of prosecutorial misconduct rise to the level to warrant habeas relief, trial counsel's affidavit is of little weight.

### D.  Procedural Default - Claims III. - VII.

#### 1.  Background

Petitioner's third claim alleges ineffective assistance of counsel for failing to (1) preserve issues of judicial misconduct, (2) properly investigate Shaken Baby Syndrome (SBS) and secure a better expert for the defense, (3) demand that the trial court exclude SBS as "junk science" and (4) preserve the sufficiency of the evidence of felony murder, which includes a claim challenging the viability of the felony-murder statute and predicate crime of first-degree child abuse.

Petitioner's fourth habeas claim alleges his due process right was violated when the appellate courts refused to grant a new trial based on newly discovered evidence.

Petitioner's fifth claim alleges that the presentation of SBS was "junk science" and denied him a right to a fair trial.

Petitioner's sixth claim alleges a deprivation of his right to a fair trial where the trial court was biased and engaged in improper conduct.

Petitioner's seventh claim alleges that evidence of felony murder was insufficient and challenges the Michigan statute under which he was convicted.

Respondent says that all of these claims are procedurally defaulted because he did not raise them on direct appeal, the trial court denied relief under a procedural default analysis and the Michigan Court of Appeals and Michigan Supreme Court also denied relief based on procedural default. Petitioner contends either that the claims are not defaulted or that he has shown cause and prejudice, via ineffective assistance of trial and appellate counsel, to overcome his default.

## 2. Decision

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Such a default may occur if the state prisoner files an untimely appeal, if he fails to present an issue to a state appellate court at his only opportunity to do so, or if he fails to comply with an independent and adequate state procedural rule that required him to have done something at the trial court level to preserve his claimed error for appellate review, e.g., if the appellate court finds that the petitioner failed "to establish

18

entitlement to relief under MCR 6.508(D)" Id. at 752; See Burroughs v. Makowski, 282

F.3d 410, 413 (6th Cir. 2002); Rust v. Dent, 17 F.3d 155, 160 (6th Cir. 1994).

Application of the cause and prejudice test may be excused if a Petitioner

"presents an extraordinary case whereby a constitutional violation resulted in the

conviction of one who is actually innocent." Rust,17 F.3d at 162; Murray v. Carrier, 477

U.S. 478 496 (1986).

Here, Respondent is correct that these claims are procedurally defaulted.

Petitioner did not raise these claims on direct appeal. He raised them for the first time

in his motion for relief from judgment in the trial court. The trial court's decision denying

the motion begins with application of Rule 6.508(D)(3), which is the procedural default

rule requiring a defendant to establish cause and prejudice. The trial court

acknowledged that Petitioner alleged ineffective assistance of appellate counsel as

cause for failure to raise the issues on direct appeal, but found that appellate counsel

was not ineffective and therefore Petitioner could not show cause. Both the Michigan

Court of Appeals and Michigan Supreme Court denied relief, citing M.C.R. 6.508(D).

The trial court and state appellate courts' reliance on M.C.R. 6.508(D) shows that the

decision to deny relief rested exclusively on a state procedural rule and is sufficient to

invoke the doctrine of procedural default. See Spencer v. Booker, No. 05-1925, 2007

WL 3391207 (6th Cir. Nov. 14, 2007) (unpublished); McCray v. Metrish, 232 F. App'x

469 (6th Cir. 2007) (unpublished decision); Luberda v. Tripett, 211 F.3d 1004 (6th Cir.

2000).

Thus, Petitioner's claims cannot be reviewed unless Petitioner can show cause

and prejudice or actual innocence. Petitioner alleges ineffective assistance of trial and appellate counsel. Ineffective assistance of counsel claims are evaluated under the criteria established in Strickland v. Washington, 466 U.S. 668 (1984). A determination of whether Petitioner received ineffective assistance of counsel so as to overcome his procedural default requires an examination of the merits of the claims. That is, if the underlying claims lacks merit, then neither trial nor appellate counsel was deficient for failing to raise the claims on direct appeal. To this end, the Court will examine the underlying claims.

E. Trial Counsel's Letter and Affidavit and Ineffective Assistance of Counsel

Trial counsel wrote a letter to Petitioner's appellate counsel, dated December 5, 2001 in which he outlines many areas where he states he might not have done a good job, including not objecting to alleged instances of prosecutorial misconduct and judicial bias. Appellate counsel raised some, but not all issues, particularly with respect to judicial bias and prosecutorial misconduct. This fact raises an inference that the failure to raise certain issues was a matter of trial strategy and does not rise to the level of ineffective assistance of counsel. See McMeans v. Brigano, 228 F.3d 674 (6th Cir. 2000).

As noted above, trial counsel's 2001 letter has been revamped into an affidavit dated November 30, 2004 which contains the same and additional points of where trial counsel believes the trial was unfair. This affidavit was before the trial court and Michigan appellate courts in ruling on Petitioner's motion for relief from judgment. As noted above, the Court does not find that the prosecutor committed misconduct; therefore, trial counsel's affidavit on this point is not persuasive. Trial counsel's belief

20

as to other underlying claims is considered below in evaluating the merits of the underlying claims.

E.  Claim III. and Claim VIII. - Ineffective Assistance of Trial and Appellate Counsel

As noted above, these claim must be resolved by addressing the underlying allegations of ineffectiveness, i.e. the claims which Petitioner says should have been raised.  This is done below.

F.  Claims IV. and V. - Evidence Relating to SBS

1.  Background/Parties' Positions

Claims four and five relate to evidence of SBS.  In claim four, Petitioner says that newly discovered evidence, in the form of an opinion letter from Dr. Ronald H. Uscinski, M.D., who states his belief that the victim was not shaken.  In claim five, Petitioner says that SBS is "junk science" which should have been excluded.  Petitioner essentially argues that Dr. Uscinski's letter (1) demonstrates that he is entitled to a new trial based on new evidence and (2) shows trial and appellate counsel were ineffective in failing to adequately investigate SBS, and (3) shows Petitioner is actually innocent.

The trial court found both claims without merit.  As to the letter from Dr. Uscinski, the trial court first explained that two medical doctors testified for the prosecution.  Both specialized in pathology and cause of death, including children, opined that the victim was shaken and beaten.  Petitioner called his own expert and also opined that the victim died of head injuries that fit into the category of SBS.  Petitioner's expert, however, attempted to lengthen the time in which the injuries could have manifested themself, thereby bolstering Petitioner's theory that the victim was injured before Petitioner began watching her.

The trial court also noted that the letter from Dr. Uscinski was not an affidavit, or filed within one year of entry of the judgment, as required by the applicable rule. The trial court further noted that:

> . . . the testimony as to the cause of her death came from two pathologists who were trained to ascertain the cause of death, and there is no reason that their testimony should now be deemed to be subject to challenge by a letter from a pediatric neurosurgeon whose specialty is not determining cause of death.
> It is frequently possible to search out, and find, after a trial, someone who will opine on the relevant issues differently than the witnesses who testified at trial. This claim of "newly discovered evidence" is not supported by affidavit, is too late, and could, at best, have been used to impeach the trial witness.

Trial Court Order at p. 6. The trial court also noted that the medical evidence was that the victim died from being shaken <u>and</u> blunt force trauma (being beaten), the latter of which Dr. Uscinski does not address.

The Court agrees with the trial court. Dr. Uscinski opines that "shaking played no role in the child's injuries." This opinion, at best, counters the two opinions of the prosecution witnesses. Dr. Brian Nolan, a certified physician and pediatric critical care and Director of Critical Care at the Hurley Medical Center, testified that he evaluated the victim when she was brought to the emergency room in a coma. Dr. Nolan described his external observation, which included retinal hemorrhages and multiple bruises. The victim also suffered from subdural hemorrhaging and hematoma. Dr. Nolan opined that the victim was shaken <u>and beaten</u>. He also testified that the victim's symptoms would have manifested themselves immediately, or shortly before admission, within two hours. He further opined that her injuries were consistent with child abuse.

Dr. Terry Krznarich, a board certified pathologist, performed an autopsy on the victim. He noted the victim had multiple bruises, including bruises on her upper arms

consistent with hand prints of an adult and SBS.  Dr. Krznarich also found subdural

hematoma and subarachnoid bleeding as well as retinal hemorrhaging.  He further

testified that the victim's injuries were consistent with blunt force trauma, such as being

thrown against another object or receiving blows to the head, and having been shaken

and beaten.

Dr. Laurence Simsom, who was board certified in forensic pathology and who

had testified as a expert many times, testified for the defense.  He also opined that the

victim died from being shaken and struck.  However, he indicated that the time between

the injuries and their manifestation may have been longer, thus bolstering Petitioner's

theory that the victim was harmed before Petitioner began watching her.

The Court agrees with the trial court that SBS has been a valid recognized

medical diagnosis based on scientific evidence.  As such, the trial court did not err in

allowing evidence of SBS into evidence at Petitioner's trial.

Following oral argument, however, Petitioner submitted supplemental authority,

attaching case law from two state appellate courts in Wisconsin and Texas and two

articles challenging the science behind SBS.  In the first case, Ex Parte Henderson, 246

S.W.3d 960 (Ct. Crim. App. Tx. 2007), a babysitter was convicted of capital murder of a

three month old infant.  The defense was that the infant fell out of her arms and hit his

head on a concrete floor.  The defendant presented the state court with an affidavit from

the medical examiner recanting his trial testimony.  The court granted defendant a stay

of execution based on a prima facie finding of newly discovered evidence and

remanded the case to the trial court for further proceedings.  While the medical

examiner's affidavit stated that the head trauma the victim sustained could have been

the result of an accidental fall, based on his greater understanding of pediatric head trauma injuries, it does not establish that Petitioner is entitled to habeas relief. The case involved the application of state law regarding new evidence and the new evidence was wholly different than the evidence Petitioner relies on here to support his claims.

In the second case, <u>State v. Edmunds</u>, 746 N.W.2d 590 (Wis. Ct. App. 2008), the defendant appealed from an order denying a motion for new trial following a conviction for murder in the shaking death of an infant. The Wisconsin appellate court granted the defendant a new trial based on newly discovered evidence under state law, concluding that since 1997 " a significant debate" has arisen in the medical community regarding SBS and injuries.

The articles Petitioner submitted further explore the debate regarding the nature of injuries and SBS.

2.

Petitioner's claim fails. As to Petitioner's claim that he is entitled to a new trial based on Dr. Uscinski's letter, in <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993), the Supreme Court explained that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." A claim of actual innocence can only serve to excuse a procedural default so that a petitioner may bring an independent constitutional claim challenging his conviction or sentence. <u>Id</u>. at 404, 113 S.Ct. 853. "The rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Id. The Sixth Circuit has made clear that

a free-standing innocence claim is not cognizable for habeas review. Cress v. Palmer, 484 F.3d 844, 854 (6th Cir. 2007). Under the Schlup standard of "actual innocence," "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner has made no such showing in this case.

Dr. Uscinski's letter and the supplemental authority do not establish that Petitioner is actually innocent within the meaning of Schlup. Significantly, Dr. Uscinski does not address the undisputed evidence in the record that the victim also sustained numerous bruises indicative of being beaten. At best, as noted above, his opinion would have provided a counter opinion to that of Dr. Nolan and Dr. Krznarich. It is not exculpatory evidence to show that Petitioner is factually innocent. As the trial court noted, it is often possible to find an expert after a trial who would have opined differently. Petitioner is not entitled to a new trial simply because he has now found an expert who he believes would have testified more favorably for him.

Moreover, trial counsel and appellate counsel were not ineffective in the manner in which they approached SBS. Trial counsel did obtain an expert who testified as to a longer possible interval between the victim's injuries and their manifestation, which bolstered Petitioner's theory that the victim was injured before he cared for her. The

fact that another expert might have opined the victim was not shaken, with the benefit of hindsight, does not establish ineffective assistance of counsel. That there appears to be some debate in the scientific community, the extent to which is not clear, as to the injuries necessary to support a theory of SBS, does not mean Petitioner is entitled to habeas relief. The facts of this case were that the victim was shaken and beaten. Any doubt as to whether she was shaken does not speak to the fact that her injuries were also consistent with being beaten.

Additionally, as Respondent points out, Petitioner now appears to argue that part of his defense was that he accidentally dropped the victim after she defecated on the floor and on him. This was not Petitioner's defense at trial. Petitioner in fact denied making statements to several friends that he accidentally dropped the victim while changing her. Petitioner also argues that his defense was that the victim sustained the injuries the night before when she fell while riding in a car and her head struck the dash. At trial, Petitioner admitted he did not mention this incident to anyone and could not explain all of the other marks and bruises later seen on the victim.

Overall, Petitioner has not shown that counsel was ineffective in the manner in which the SBS was presented at trial or that he is actually innocent so as to overcome his procedural default of his claim regarding the admission of evidence of SBS.

### G. Claim VI. - Judicial Bias

#### 1. Background/Parties' Positions

Petitioner claims that the trial court was biased against him and his counsel. Trial counsel outlined several of these instances in his affidavit, many of which were in

front of the jury. The trial court denied this claim. The trial court first noted that it had previously denied a claim of bias, citing a transcript of a motion hearing held on February 7, 2005. Respondent says the claim is defaulted and lacks merit.

2. Decision

An impartial judge is a necessary component of a fair trial. In re Murchison, 349 U.S. 133, 136 (1955); Tumey v. Ohio, 273 U.S. 510, 532 (1927). The Supreme Court explained, "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." Carter v. Kentucky, 450 U.S. 288, 302 n. 20 (1981) (quoting Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894)). When considering judicial bias claims, this Court "looks to the Supreme Court's decision in Liteky v. United States to provide the standard." Alley v. Bell, 307 F.3d 380, 386 (6th Cir. 2002) (applying Liteky under AEDPA).

In Liteky, the Supreme Court cautioned that a "judge's ordinary efforts at courtroom administration-even a stern and short tempered judge's ordinary efforts at courtroom administration-remain immune." Liteky v. United States, 510 U.S. 540, 556 (1994). "Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display do not establish bias or partiality." Id. at 555-56.

In the present case, Petitioner submits a veritable laundry list of complaints and accusations against the trial court. The allegations are detailed extensively in

Petitioner's papers, including an affidavit from trial counsel. After carefully reviewing all of the allegations and the record, the Court is satisfied that none of them rise to the level of judicial bias or misconduct. In fact, some allegations resulted in Petitioner's favor. For example, Petitioner says there was a poster against child abuse displayed in the courthouse. When the trial court was informed about the poster, it was removed. There is no evidence the trial court was involved in the placement of the poster or that the jury saw the poster. Petitioner also says the trial court failed to control the prosecutor's misconduct. The Court of Appeals, however, rejected the claim that the prosecutor committed misconduct and the Court agreed with this conclusion. Thus, the trial court cannot be found to be biased in this regard. Petitioner further says that the trial court made inappropriate statements during a pretrial conference about trial counsel not understanding the case because he did not have children. However, Petitioner does not indicate how any such statement unfairly impacted the jury or the proceedings. Petitioner also says that the trial court made improper gestures or facial expressions during the trial and, at one point, the trial court laughed. Petitioner, however, fails to show how any of these alleged actions impacted his defense or the proceedings. Moreover, the trial court repeatedly instructed the jury that its comments, rulings, and statements could not be considered reflective of the trial court's view of the case and were otherwise properly instructed on the law of the case. Petitioner also says that the trial court asked everyone to rise when the prosecution witness, Dr. Krznarich, was excused from testifying. The record shows that while everyone rose, the trial court excused the witness and then the jury. The direction to rise was likely for the purposes of excusing the jury. Moreover, the trial court asked the jury to rise when Petitioner's

expert was excused.  Overall, Petitioner has failed to show that the trial court was biased or committed misconduct.  Because Petitioner's claim lacks merit, appellate counsel was not ineffective for failing to raise it on appeal.  Petitioner has also not shown prejudice.  Petitioner has therefore failed to overcome his default of this claim.

### H.  Claim VII. - Sufficiency of the Evidence/Felony Murder

#### 1.  Background/Parties' Positions

Petitioner says that the that evidence of felony murder was insufficient.  A review of this claim shows that Petitioner is not making a sufficiency of the evidence challenge in the traditional sense, but is instead challenging the fact that the Michigan legislature has determined that first-degree child abuse is a predicate felony for the felony-murder statute.  Respondent says that this claim presents an issue of state law which is not cognizable on habeas review.

The trial court denied this claim, noting that the argument that first-degree child abuse should not be considered a predicate felony has been rejected by the Michigan courts.  The trial court also noted that conduct constituting first-degree child abuse is defined in the statute, at M.C.L. 750.136b, and provides fair notice to a defendant as to the prohibited conduct.

#### 2.

Petitioner's claims presents an issue of state law which is not cognizable on habeas review.  In 1994, the Michigan legislature amended the felony-murder statute to include first-degree child abuse as a predicate felony.  Under the felony murder statute, a person is guilty of first-degree felony murder if they commit a second-degree murder "in the perpetration of, or attempt to perpetrate" any of a list of predicate felonies.

Petitioner argues that the legislature did not intend to classify every murder of a child by their custodian as first-degree murder, yet that it how the statute operates.  The Michigan court has rejected this argument.  See <u>People v. Magyar</u>, 250 Mich. App. 408 (2002); <u>People v. Knox</u>, 256 Mich. App. 175 (2003).  While Petitioner attempts to federalize the claim by arguing that the statute does not provide fair notice and it therefore unconstitutionally vague, Petitioner's argument is clearly a matter within the province of the state courts and not a federal court on habeas review.

V.  Conclusion

For the reasons stated above, Petitioner has failed to show that he is entitled to habeas relief on any of this claims.  Accordingly, the petition is DENIED.

SO ORDERED.


　　　　　　　　　　　　　 s/Avern Cohn_____
　　　　　　　　　　　　　AVERN COHN
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE


Dated:  June 11, 2008


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 11, 2008, by electronic and/or ordinary mail.


　　　　　　　　　　　　　 s/Julie Owens_____
　　　　　　　　　　　　　Case Manager, (313) 234-5160